2016R00002/DS/ZI

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. John Michael Vazquez |
| | : | |
| | : | Criminal Number: 18-79 |
| v. | : | |
| | : | 18 U.S.C. § 371 |
| | : | 15 U.S.C. § 78j(b) |
| JOSEPH TAUB | : | 15 U.S.C. § 78i(a)(2) |
| | : | 15 U.S.C. § 78ff |
| | : | 17 C.F.R. § 240.10b-5 |
| | : | 18 U.S.C. § 2 |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Commit Securities Fraud by Using Manipulative and Deceptive Devices in Connection with the Purchase or Sale of a Security)

**Individuals, Entities, and Definitions**

1. At all times relevant to this Indictment:

    a.    Defendant JOSEPH TAUB was self-employed as a day trader of securities and resided in or around Clifton, New Jersey.

    b.    Shaun Greenwald, a co-conspirator not named in this Indictment, was an accountant and resided in or around Cedarhurst, New York.

    c.    "CC-2," a co-conspirator not named in this Indictment, was a Straw Account Holder and a school psychologist and resided in or around Passaic, New Jersey.

d.    "Professional Brokerage Firms" enabled customers, primarily professional securities traders, to trade securities.   Professional Brokerage Firms required prospective customers to complete account opening paperwork before opening accounts, and Professional Brokerage Firms relied upon the representations provided by the prospective customers in the account opening paperwork.

e.    "Retail Brokerage Firms" enabled customers, primarily non-professional securities traders, to trade securities.   Retail Brokerage Firms required prospective customers to complete account opening paperwork before opening accounts, and Retail Brokerage Firms relied upon the representations provided by the prospective customers in the account opening paperwork.

f.    "Market Makers" were companies that facilitated trading in securities by buying and selling particular securities on a regular and continuous basis at a publicly quoted price.

g.    "Electronic Communication Networks" ("ECNs") were securities trading systems that connected buyers and sellers electronically, enabling them to trade directly with one another.

h.    "Direct Access Trading" enabled securities traders to trade directly with counterparties such as market makers, specialists, and ECNs. Direct Access Trading also allowed traders control over the routing of their trades by sending an order to a specific counterparty – be it a market maker,

2

specialist, or ECN.

       i.     The "National Best Bid and Offer" ("NBBO") was a method used to calculate the highest "bid" (offer to buy) and lowest "offer" (offer to sell) available to securities traders for a particular security at a particular time.

       j.     "Execution Quality" was a measure used to evaluate how well Retail Brokerage Firms were placing orders, including whether they were able to provide their customers with a price better than the NBBO and how fast they were able to fill orders.

       k.     "Price Improvement" was a part of Execution Quality.   Retail Brokerage Firms sometimes executed a certain percentage of their customers' trades at prices better than the prevailing NBBO, i.e., either below the best offer for their customers' buy orders or above the best bid for their customers' sell orders.   Retail Brokerage Firms generally offered a limited amount of Price Improvement.

       l.     "Enhanced Liquidity" was a practice that Retail Brokerage Firms used to help provide Price Improvement.   To provide a price better than the prevailing NBBO, Retail Brokerage Firms routed certain of their customers' trades to Market Makers.   The Market Makers then took the other side of the trade, frequently at prices better than the NBBO and at lot sizes not available in the market.

**Overview of the Scheme**

2.      From in or about 2014 through in or about 2016, defendant
JOSEPH TAUB and his co-conspirators (the "Co-Conspirators") engaged in a
scheme to manipulate the market in the securities of various publicly traded
companies through a pattern of coordinated trading done through multiple
brokerage accounts defendant TAUB secretly funded and controlled in order to
create the false impression of real supply and demand in the securities.   To
perpetuate the scheme, TAUB and his co-conspirators also made material
misrepresentations and omissions to brokerage firms to continue their illegal
activities (the "Manipulation Scheme").

3.      Defendant TAUB and his Co-Conspirators executed their scheme
by engaging repeatedly in a series of near simultaneous transactions in a
security that were not intended to be bona fide orders reflecting a view that the
security was under- or over-valued, but instead were designed to artificially
influence the market price of the security and induce other market participants
to trade in it based on the false impression that there was real market interest
in the security.   The Co-Conspirators understood at the outset that these
trades were designed either to lose money or be cancelled, and they
nevertheless proceeded with them in order to achieve their real purpose of
artificially driving the price of the security up to benefit a separate and
substantially larger position they held in the same security ("Coordinated

4

Trading Events" or "CTEs").

4.      Most CTEs involved trading in at least two accounts the Co-Conspirators controlled.   The CTEs generally followed a particular pattern: First, a "Winner Account" purchased a large block of shares in the security to be manipulated.   Next, a "Loser Account" placed multiple small orders in the same security to create upward pressure on the stock price.   Once the price of the security moved higher due to the Loser Account's manipulative orders, the Co-Conspirators sold their large position in the Winner Account and then sold the shares from any executed trades in the Loser Account and cancelled all unexecuted orders in the Loser Account.   The Co-Conspirators understood that the Loser Accounts would generally lose money, due to their role in the CTEs.   The Co-Conspirators expected, however, that their gains from the Winner Accounts would more than make up for the losses in the Loser Accounts.

5.      By in or about 2015, brokerage firms began closing brokerage accounts used in the Manipulation Scheme because of the firms detected patterns of manipulative trading.   Defendant TAUB and his Co-Conspirators then began engaging in deceptive conduct designed to evade detection of the Manipulation Scheme, including misrepresenting to brokerage firms the identities of traders and the nature of their trading.

6.      Certain Co-Conspirators recruited other Co-Conspirators ("Straw

Account Holders") to open brokerage accounts (the "Straw Accounts"). Defendant TAUB primarily funded the Straw Accounts, and kept the majority of the profits made from trading in the Straw Accounts.   Defendant TAUB and others instructed the Straw Account Holders to lie to the brokerage firms when opening and maintaining the Straw Accounts, including by misrepresenting who controlled the accounts, who funded the accounts, and by instructing Straw Account Holders to lie to the brokerage firms if questioned about the trading in the Straw Accounts.   The Co-Conspirators also took steps to conceal who controlled the accounts, including by masking the locations where they logged into the Straw Accounts.

## **The Conspiracy**

7.     From in or about 2014 through in or about 2016, in Hudson and Passaic Counties, in the District of New Jersey, and elsewhere, defendant

### **JOSEPH TAUB**

did willfully and knowingly combine, conspire, confederate and agree with others, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, to use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements

6

made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Goal of the Conspiracy

8.     The goal of the conspiracy was for the Co-Conspirators to manipulate the price of securities in publicly traded companies through the Manipulation Scheme by injecting inaccurate information into the marketplace, creating the false impressions of supply and demand for these securities, and then profiting from transactions in the securities whose prices they tried to manipulate; and making material misrepresentations and omissions to continue the Manipulation Scheme and further profit from it.

### Manner and Means of the Conspiracy

9.     It was part of the conspiracy that the Co-Conspirators engaged in numerous Coordinated Trading Events (CTEs).

10.     It was further part of the conspiracy that the CTEs frequently used two or more accounts held at different brokerage firms and in the names of Straw Account Holders.   When two accounts were used for a CTE, at least one account, held at a Retail Brokerage Firm (the "Winner Account"), was primarily used to purchase larger quantities of securities, and then sell at prices that the

Co-Conspirators intended to affect through manipulative orders. The manipulative orders were placed using an account held at a Professional Brokerage Firm, typically multiple small orders using Direct Market Access and which generally lost money (the "Loser Account").   The purpose of the trading in the Loser Account was to induce other market participants to trade in the security by creating actual or apparent active trading and to artificially raise or depress the price of the security.   In some instances where Retail Brokerage Firms provided Direct Access Trading, the Co-Conspirators engaged in CTEs using just one account.

11.   It was further part of the conspiracy that the Co-Conspirators engaged in numerous trading techniques in furtherance of the Manipulation Scheme, including, but not limited to, the following:

a.   By purchasing relatively large numbers of shares in a Winner Account with the benefits of Price Improvement and Enhanced Liquidity, and then, using Direct Access Trading, placing trades in a Loser Account that removed offers at lower prices for the purpose of artificially driving the price up.   Once the bid rose, the large position in the Winner Account would be sold for a profit;

b.   By placing orders to create the false appearance of liquidity and market depth for the stocks the Co-Conspirators intended to manipulate; and

c.   By placing a series of orders at increasing prices to induce others to purchase shares in those securities and to cause the price of the security to rise.

12.   It was further part of the conspiracy that after many of the Co-

8

Conspirators' brokerage accounts were closed for suspected improper manipulative trading, defendant TAUB and his Co-Conspirators made material misrepresentations and omissions to the brokerage firms in order to re-establish market access through the Professional Brokerage Firms and Retail Brokerage Firms (collectively, the "Brokerage Firms") in order to continue the manipulative and fraudulent conduct.

13.    It was further part of the conspiracy that defendant TAUB and his Co-Conspirators took steps to conceal their connection to many of the Loser Accounts and Winner Accounts.   They did so by, among other things, creating the Straw Accounts.

14.    It was further part of the conspiracy that defendant TAUB and his Co-Conspirators made and caused to be made affirmative material misrepresentations and material omissions of fact to the Brokerage Firms in connection with the Straw Accounts, including:

> a. concealing defendant TAUB's connection to Ultimate Ventures LLC when opening a brokerage account through false statements of material facts and material omissions;
>
> b. concealing defendant TAUB's connection to EAC Capital LLC when opening a brokerage account through false statements of material facts and material omissions; and
>
> c. concealing defendant TAUB's connection to GMD Associates LLC when opening a brokerage account through false statements of material facts and material omissions.

15.    It was further part of the conspiracy that, in fact, defendant TAUB

9

and his Co-Conspirators secretly controlled the Straw Accounts, using various means, including:

    a. The Straw Account Holders generally did not fund the Straw Accounts – rather, defendant TAUB and others did;

    b. Defendant TAUB and others funded the Straw Accounts in a manner that disguised from the brokerage firms that defendant TAUB was the true source of the funds and thus the beneficial owner of the securities in those accounts;

    c. Defendant TAUB directed his Co-Conspirators and others on how to respond when brokerage firms questioned trading patterns in the Straw Accounts; and

    d. Defendant TAUB and his Co-Conspirators directed trading in the Straw Accounts to conduct CTEs in a manner that disguised from the brokerage firms who was controlling the accounts.

16.    It was further part of the conspiracy that by using the Straw Account Holders to conceal other Co-Conspirators' connection to the Straw Accounts, the Co-Conspirators deceived the Brokerage Firms into allowing defendant TAUB to have continued access to accounts after the Brokerage Firms had shut down accounts tied to defendant TAUB.

17.    It was further part of the conspiracy that defendant TAUB received the majority of the profits earned conducting CTEs from the Straw Accounts and paid the owners of the Straw Accounts a portion of the profits earned in the scheme.

18.    It was further part of the conspiracy that defendant TAUB and his Co-Conspirators engaged in the conduct described below in Count Thirteen

10

relating to their scheme to defraud the United States, in part, to hide from the Brokerage Firms and others the identities of who controlled the Straw Accounts and who actually reaped the majority of the profits from those Straw Accounts.

**Overt Acts**

19.     In furtherance of the conspiracy and to effect the illegal objects of the conspiracy, the following overt acts, among others, were committed in the District of New Jersey and elsewhere.

  a. On or about January 8, 2015, defendant TAUB logged into a brokerage account from an internet connection in New Jersey to conduct a CTE.

  b. On or about June 18, 2015, defendant TAUB logged into a brokerage account from an internet connection in New Jersey to conduct a CTE.

  c. On or about April 17, 2016, defendant TAUB sent a message from New Jersey to Greenwald discussing certain Loser Accounts and instructing Greenwald to take action in furtherance of the conspiracy.

  d. On or about July 12, 2016, defendant TAUB sent a message to a Co-Conspirator that read, in substance and in part, as follows:

  > And FYI u haven't seen anything yet I can show U stuff that will blow your mind Guarantee to make 100k every day!! But also a guarantee they will shut u

  e. On or about June 20, 2016, TAUB sent a message from New Jersey to CC-2 directing CC-2 to mislead a Brokerage Firm about transactions occurring out of state in one of the Straw Accounts that read, in substance and in part, as follows:

  > It's a VPN[.] Tell them for security reasons your

11

using a VPN[.] And it's your doing[.]

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SIX
(Securities Fraud – Using Manipulative and Deceptive Devices
in Connection with the Purchase or Sale of a Security)

1.     Paragraphs One through Six and Nine through Eighteen of Count One are re-alleged and incorporated as if set forth fully herein.

2.     From in or about 2014 through in or about 2016, in Hudson and Passaic Counties, in the District of New Jersey, and elsewhere, defendant

**JOSEPH TAUB**

unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit: the CTE transactions set forth below, each constituting a separate count of this Indictment:

13

| Count | Approximate Date and Time | Ticker | Brokerage Accounts |
|---|---|---|---|
| Two | January 8, 2015 from 11:46 a.m. through 11:48 a.m. | KITE | TD Ameritrade Account ending in 9639 Lightspeed Account ending in 0035 |
| Three | June 18, 2015 from 9:54 a.m. through 9:56 a.m. | ESPR | TD Ameritrade Account ending in 9639 Lightspeed Account ending in 0035 |
| Four | January 6, 2016 from 2:09 p.m. through 2:11 p.m. | AGIO | Schwab Account ending in 6520 Lightspeed Account ending in 0140 |
| Five | February 16, 2016 from 10:10 a.m. through 10:12 a.m. | RARE | Scottrade Account ending in 1678 Lightspeed Account ending in 0140 |
| Six | July 18, 2016 from 10:21 a.m. through 10:27 a.m. | WRLD | Schwab Account ending in 8747 Scottrade Account ending in 0153 Lightspeed Account ending in 0140 |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, and Title 18, United States Code, Section 2.

14

## COUNT SEVEN
### (Conspiracy to Manipulate Securities Prices)

1.      Paragraphs One through Six and Nine through Eighteen of Count One are re-alleged and incorporated as if set forth fully herein.

### The Conspiracy

2.      From in or about 2014 through in or about 2016, in Hudson and Passaic Counties, in the District of New Jersey, and elsewhere, defendant

### JOSEPH TAUB

did willfully and knowingly combine, conspire, confederate and agree with others, to, alone and with one or more other persons, effect a series of transactions, in securities registered on a national securities exchange, creating actual or apparent active trading in such security, and raising or depressing the price of such security, for the purpose of inducing the purchase and sale of such security by others, contrary to Title 15, United States Code, Sections 78i(a)(2) and 78ff, and Title 18, United States Code, Section 2.

### Goal of the Conspiracy

3.      The goal of the conspiracy was for the Co-Conspirators to unlawfully manipulate the price of the securities in which they were trading and to profit from their actions.

### Overt Acts

4.      In furtherance of the conspiracy and to effect the objects of the conspiracy, the overt acts described in paragraph 19(a) and (b) of Count One,

15

among others, were committed in the District of New Jersey and elsewhere.

All in violation of Title 18, United States Code, Section 371.

## COUNTS EIGHT THROUGH TWELVE
(Manipulation of Securities Prices)

1.    Paragraphs One through Six and Nine through Eighteen of Count One are re-alleged and incorporated as if set forth fully herein.

2.    From in or about 2014 through in or about 2016, in Hudson and Passaic Counties, in the District of New Jersey, and elsewhere, defendant

### JOSEPH TAUB

willfully, alone and with one or more other persons, effected a series of transactions, in a security registered on a national securities exchange, creating actual or apparent active trading in such security, and raising or depressing the price of such security, for the purpose of inducing the purchase and sale of such security by others, to wit: the CTE transactions set forth below, each constituting a separate count of this Indictment:

| Count | Approximate Date and Time | Ticker | Brokerage Accounts |
|---|---|---|---|
| Eight | January 8, 2015 from 11:46 a.m. through 11:48 a.m. | KITE | TD Ameritrade Account ending in 9639 Lightspeed Account ending in 0035 |
| Nine | June 18, 2015 from 9:54 a.m. through 9:56 a.m. | ESPR | TD Ameritrade Account ending in 9639 Lightspeed Account ending in 0035 |
| Ten | January 6, 2016 from 2:09 p.m. through 2:11 p.m. | AGIO | Schwab Account ending in 6520 Lightspeed Account ending in 0140 |
| Eleven | February 16, 2016 from 10:10 a.m. through 10:12 a.m. | RARE | Scottrade Account ending in 1678 Lightspeed Account ending in 0140 |
| Twelve | July 18, 2016 from 10:21 a.m. through 10:27 a.m. | WRLD | Schwab Account ending in 8747 Scottrade Account ending in 0153 Lightspeed Account ending in 0140 |

17

In violation of Title 15, United States Code, Sections 78i(a)(2) and 78ff, and Title 18, United States Code, Section 2.

## COUNT THIRTEEN
### (Conspiracy to Defraud the United States)

1.  Paragraphs One through Six and Nine through Eighteen of Count One are re-alleged and incorporated as if set forth fully herein.

### The Conspiracy

2.  From in or about 2014 through in or about 2016, in Hudson and Passaic Counties, in the District of New Jersey, and elsewhere, defendant

### JOSEPH TAUB

knowingly and willfully conspired with others to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

### Goal of the Conspiracy

3.  The goal of the conspiracy was for TAUB, Greenwald, and others (the "Tax Co-Conspirators") to defraud the United States by interfering with and obstructing the lawful governmental functions of the Internal Revenue Service by deceit, craft, trickery and dishonest means (the "Tax Scheme").

### Manner and Means of the Conspiracy

4.  It was part of the conspiracy that the Tax Co-Conspirators and others engaged in the manner and means described in Paragraphs Nine through Eighteen of Count One, among others, and those described below.

5.     It was further part of the conspiracy that the Tax Co-Conspirators and others hid from the Brokerage Firms and from the Internal Revenue Service the identity of who actually controlled the Straw Accounts, and the identity of who actually reaped the majority of the profits from those Straw Accounts.

6.     It was further part of the conspiracy that, because of the Tax Co-Conspirators' actions, the profits from the Straw Accounts were taxed at the lower marginal tax rates applicable to the Straw Account Holders, and not the higher marginal tax rates applicable to defendant TAUB or other Tax Co-Conspirators.

7.     It was further part of the conspiracy that the Tax Co-Conspirators agreed to and did provide the funds to pay the taxes on the Straw Accounts at the Straw Account Holders' marginal tax rates.

8.     It was further part of the conspiracy that through these manner and means, the Tax Co-Conspirators attempted to and did impede, impair, obstruct, and defeat the lawful governmental functions of the Internal Revenue Service.

## Overt Acts

9.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of New Jersey and elsewhere.

a. On or about February 14, 2016, defendant TAUB sent a message to Greenwald discussing the calculation of taxes for profits on certain Straw Accounts.

b. On or about April 17, 2016, defendant TAUB sent a message from New Jersey to Greenwald discussing certain Loser Accounts and instructing Greenwald to take action in furtherance of the conspiracy.

c. On or about September 4, 2016, Greenwald sent a message to TAUB and others that read, in substance and in part, as follows:

> Please note that before any new accounts are open, the account owner must agree to use us for the accounting and tax payments and filing. We have the experience with the taxation of traders that other accountants do not have. Additionally, the most ideal account owner is a US Citizen who recently moved to Israel or other country, since he will have a US address, yet doesn't pay state taxes, which saves us thousands in taxes.

d. On or about September 7, 2016, Greenwald sent a message to another co-conspirator reporting that the profits in one of the Straw Accounts was approximately $1 million.

e. On or about October 6, 2016, Greenwald sent a message to another co-conspirator reporting profits for one of the Straw Accounts.

f. On or about November 7, 2016, Greenwald sent a message requesting the login information for several Straw Accounts.

All in violation of Title 18, United States Code, Section 371.

21

## FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH TWELVE

1.      As the result of committing the offenses constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Counts One through Twelve of this Indictment, defendant JOSEPH TAUB shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the said conspiracy and securities fraud offenses, and all property traceable thereto, including, but not limited to the Specific Property listed in Attachment A to this Indictment.

### Substitute Assets Provision

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third person;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of

22

the defendant up to the value of the above-described forfeitable property.

A True Bill,

Foreperson

CRAIG CARPENITO
United States Attorney

23

## ATTACHMENT A



a. Optionshouse account number ▉▉▉2708 held in the name of Joseph Taub;

b. Bank of America account number ▉▉▉▉9721 held in the name of M.W.;

c. Capital One Bank account number ▉▉▉5894 held in the name of E.K.;

d. Citibank account number ▉▉▉6475 held in the name of E.S.;

e. Citibank account number ▉▉▉5403 held in the name of E.S.;

f. JPMorgan Chase Bank account number ▉▉▉2005 held in the name of Joseph Taub;

g. JPMorgan Chase Bank account number ▉▉▉8225 in the name of Joseph Taub;

h. JPMorgan Chase Bank account number ▉▉▉7808 in the name of Joseph Taub;

i. JPMorgan Chase Bank account number ▉▉▉6944 in the name of C.T.;

j. JPMorgan Chase Bank account number ▉▉▉2081 in the name of Greenwald;

k. JPMorgan Chase Bank account number ▉▉▉9525 in the name of D.M.;

l. JPMorgan Chase Bank account number ▉▉▉1697 in the name of ET Interiors LLC;

m. JPMorgan Chase Bank account number ▉▉▉5566 in the name of JT Capital LLC;

n. JPMorgan Chase Bank account number ▉▉▉7696 in the name of Brighton Capital LLC;

24

o. JPMorgan Chase Bank account number ███████9317 in the name of LNW Direct LLC;

p. JPMorgan Chase Bank account number ███████0796 in the name of SGS Consulting INC.;

q. JPMorgan Chase Bank account number ███████6133 in the name of KSW Capital LLC;

r. Signature Bank account number ███████5343 held in the name of Ultimate Ventures LLC;

s. TD Bank account number ███████8414 held in the name of East 34th Street Holding LLC;

t. Wells Fargo account number ███████1851 held in the name of Developer Enterprises;

u. Wells Fargo Bank account number ███████3607 held in the name of J.B. POD [First Names of 7 Adult Children of J.B. [a/k/a J.M.] and [First Name of Minor Child of J.B.] M. [last name of J.M. a/k/a J.B.];

v. Charles Schwab account number ██████1919 held in the name of East 34th Street Holding LLC;

w. Charles Schwab account number ██████5366 held in the name of E.K.;

x. Interactive Brokers account number ██████5744 held in the name of Joseph Taub;

y. Interactive Brokers account number ██████2874 held in the name of Joseph Taub;

z. Signature Bank account number ███████7573 held in the name of B.D.;

aa.     ETrade account number █████5805 held in the name of East 34th Street Holdings LLC;

bb.     Lightspeed Trading account number ██████3808 held in the name of E.S. & J.S. JTWROS;

cc.     Merrill Lynch account number ███4j08 held in the name of Joseph Taub;

dd.     Merrill Lynch account number ███8215 held in the name of Joseph Taub C/F Minor Child 1 UTMA/NJ until age 21;

ee.     Merrill Lynch account number ███8220 held in the name of Joseph Taub C/F Minor Child 2 UTMA/NJ until age 21;

ff. Merrill Lynch account number ███8222 held in the name of Joseph Taub C/F Minor Child 3 UTMA/NJ until age 21;

gg.     Merrill Lynch account number ███8221 held in the name of Joseph Taub C/F Minor Child 4 UTMA/NJ until age 21;

hh.     Merrill Lynch account number ███8231 held in the name of Joseph Taub C/F Minor Child 5 UTMA/NJ until age 21;

ii. Merrill Lynch account number ███8212 held in the name of MLPF&S CUST FPO Joseph Taub SEP FBO Joseph Taub;

jj. Robinhood Financial account number ███1517 held in the name of E.S.;

kk.     Scottrade account number ███2170 held in the name of East 34th Street Holding LLC;

ll. Tradeking Securities account number ███5589 held in the name of Joseph Taub;

mm.   Vision Financial Markets account ███4500 held in the name of Joseph Taub;

nn.     Etrade account number ███5762 held in the name of B.D.;

oo.     Wedbush Securities account number ███0327 held in the name of East 34th Street Holding LLC;

pp.     Etrade account number ███2854 held in the name of Y.F.; and

qq.   Wells Fargo Advisors account number ███4972 held in the name of Ultimate Ventures;

rr.   Wells Fargo Advisors account number ███5891 in the name of R.W.;

ss.   TD Ameritrade account number ███4326 in the name of R.W.;

tt. TD Ameritrade account number ███4216 in the name of East 34th Street Holdings LLC;

uu.   Wells Fargo Advisors account number ███2089 in the name of East 34th Street Holdings;

vv.   Charles Schwab account number ███6742 in the name of R.K.;

ww.   Scottrade account number ███7665 in the name of R.K.;

xx.   Lightspeed Trading account number ███1206 in the name of R.K.;

yy.   Lightspeed Trading account number ███1111 in the name of M.W.;

zz.   TD Ameritrade account number ███3856 in the name of R.K.;

aaa.   Wells Fargo Advisors account number ███5042 in the name of Y.F.;

bbb.   Capital One Bank account number ███4572 in the name of S.M. and B.M.;

ccc.   Etrade account number ███9401 in the name of R.W.;

ddd.   Etrade account number ███8884 in the name of R.K.;

eee.   Bank of America account number ███9225 in the name of E.M.;

fff.   Capital One Bank account number ███9094 in the name of T.W.;

ggg.   Scottrade account ███7374 in the name of T.W.;

hhh.   Fidelity account number ███6261 in the name of M.W.;

iii.     Charles Schwab Account number ████6742 in the name of R.K.;

jjj.     Fidelity account number ████7028 in the name of Y.B.;

kkk.  Lightspeed Trading account number ████0327 in the name of East 34th Street Holdings LLC; and

lll.     Any and all ownership interest held in the name, on behalf or for the benefit of Joseph Taub and/or JT Capital LLC in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures, including but not limited to:

     i.     Ultimate Ventures LLC

     ii.     East 34th Street Holding LLC

     iii.     Developer Enterprises of America LLC

     iv.     Cornerstone Pharmaceutical

     v.     1108 60th Street Partners LLC

     vi.     Brookview Columbus LLC

     vii.     Israel Tech Fund V LLC

     viii.     David Gross Group LLC

     ix.     FH Investments I LLC

     x.     GM Resources LLC

     xi.     Hertz Investment Group

     xii.     Israel Tech Fund LLC

     xiii.     451 We Holdings LLC

     xiv.     TEG Regency Investor LLC

xv.         306-312 W Franklin Street LLC

xvi.        MHP 590 Bergen Avenue LLC

xvii.       MHP 431-437 Kennedy Blvd LLC

xviii.      MHP Chatham Portfolio LLC

xix.        MHP 6 Beech Spring Drive LLC

xx.         MHP Union City Package LLC

xxi.        NL Investments LLC

xxii.       Nucleus Resources LLC

xxiii.      Oak Tree Equities LLC

xxiv.       Old City Titanium 65 Newkirk JS LLC

xxv.        Providence Drive LLC

xxvi.       Radco Bay Meadows LLP

xxvii.      Radco Bridges LLC

xxviii.     Radco Creekside LLP

xxix.       Radco Oklahoma City Portfolio LLP

xxx.        Southeast Four Portfolio LLC

xxxi.       BOH Lender, LLC

xxxii.      Beeghly Oaks Ventures LLC

xxxiii.     Oasis Center for Rehab and Healing

xxxiv.      Heritage Center for Rehab & Specialty Care

xxxv.       Sandstone Holdings LP

| | |
|---|---|
| xxxvi. | Seaview Capital Partners, LLC |
| xxxvii. | Irvington 65 Headley LLC |
| xxxviii. | Newark 2nd Avenue LLC |
| xxxix. | Newark Parker LLC |
| xl. | RP Hampton Center LLC |
| xli. | Springdale Investments LLC |
| xlii. | TEG Country Oaks LLC |
| xliii. | TEG Acquisitions LLC |
| xliv. | TEG The Lofts at 5 Lyon LLC |
| xlv. | TEG Oak Park LLC |
| xlvi. | TEG Auburn Place LLC |
| xlvii. | TEG Wyndham Hill LLC |
| xlviii. | TEG Woodbridge LLC |
| xlix. | TEG Timberview 1 LLC |
| l. | TEG Woodland Creek LLC |
| li. | TEG Timberview 2 LLC |
| lii. | The Embassy Group, LLC |
| liii. | Victory Multi Investors |
| liv. | 2115 Washington Avenue MB LLC |
| lv. | 3RD Avenue Investments 1 LLC |

lvi.      Brookview Forum LLC

lvii.      EDMA Management Corp

lviii.      Firstfire Global Opportunities Fund LLC

lix.      H&R High Springs LLC

lx.      NC Resources LLC

lxi.      RDM Capital LLC

lxii.      Trasco LLC

lxiii.      Worldwide Stock Transfer

lxiv.      Stoney Brook MNC LLC

lxv.      MHP West Hoboken Package LLC

lxvi.      MHP 400 Passaic Avenue LLC

(the "Specific Property").

31

CASE NUMBER:  18 - 79  (JMV)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## JOSEPH TAUB

# INDICTMENT FOR

18 U.S.C. § 371
15 U.S.C. § 78j(b)
15 U.S.C. § 78i(a)(2)
15 U.S.C. § 78ff
17 C.F.R. § 240.10b-5
18 U.S.C. § 2

A True Bill.



Foreperson

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL SHAPIRO & ZACH INTRATER
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
(973) 353-6087 / (973)645-2728